**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Luis M.C.R.,

Petitioner,

v.

David Easterwood, *Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement*; Markwayne Mullin, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; Todd M. Lyons, *in his official capacity as acting director of U.S. Immigration and Customs Enforcement*; Todd Blanche, *in his official capacity as acting Attorney General of the United States*; Marcos Charles, *in his official capacity as Acting Executive Associate Director for ICE Enforcement and Removal Operations*; and Ryan Shea, *Sheriff of Freeborn County*,

Respondents.

Civ. No. 26-4183 (JWB/DLM)

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

---

Katherine Lourdes Santamaria El Bayoumi, Esq., Contreras Edin Law, PA, counsel for Petitioner.

Carl Berry, Esq., and David W. Fuller, Esq., United States Attorney's Office, counsel for federal Respondents.

David John Walker, Esq., Freeborn County Attorney's Office, counsel for Respondent Ryan Shea.

---

This case presents two related questions: whether federal immigration officers acted within their statutory authority when they arrested Petitioner Luis M.C.R. with a

warrant, and, if not, whether 8 U.S.C. § 1225(b)(2) nevertheless supplies a lawful basis for his continued detention. The first question turns on whether the arresting officers complied with requirements for a warrant-based arrest of a noncitizen who lacks lawful status. The second requires consideration of the distinct functions Congress assigned to the statutes and the proper scope of habeas relief under § 2241.

Petitioner is a noncitizen who entered the United States without inspection in 2013. Over a decade later, he was arrested and detained by Immigration and Customs Enforcement ("ICE") agents. At issue is whether his arrest was lawful.

The record establishes that Petitioner was arrested in violation of 8 C.F.R. § 236.1 and that the requirements for a valid warrantless arrest were not satisfied. Whether that violation requires release despite Respondents' reliance on § 1225(b)(2) is a separate question. For the reasons explained below, the provisions are best read to preserve their distinct functions: one governs the authority exercised to arrest Petitioner, while the other governs detention following the examination and determination prescribed there. On that reading, Respondents may not continue the present custody initiated through an arrest procedure Congress did not authorize.

## BACKGROUND

Petitioner is a citizen of El Salvador who entered the United States without inspection in 2013. (Doc. No. 1, Petition ¶¶ 3, 5; Doc. No. 8, Draves Decl. ¶ 4; Doc. No. 8-1 at 1–2.) He has lived in the country since then, most recently in South Dakota. (Petition ¶ 17; Doc. No. 8-1 at 3.) He is the father of two U.S. citizen children who reside in Colorado. (Petition ¶ 18; Doc. No. 8-1 at 3.)

On August 16, 2026, Petitioner was arrested by local law enforcement and detained at the Davison County Jail in Mitchell, South Dakota, for driving under the influence. (Petition ¶ 19; Draves Decl. ¶ 6; Doc. No. 8-1 at 2–3.)

While he was in local custody, ICE agents encountered Petitioner, performed a records check, and conducted an interview. (Doc. No. 8-1 at 2.) Based on Petitioner's answers, agents issued a Form I-247A immigration detainer and a Form I-200 arrest warrant. (Doc. No. 8-1 at 2; Draves Decl. ¶ 7; Doc. Nos. 8-3, 8-4.) Both documents are signed and dated August 16, 2026, but do not include a time. (Doc. Nos. 8-3, 8-4.)

The next morning, an ICE agent returned to the jail, served Petitioner with the I-200 warrant, and placed him under arrest. (Doc. No. 8-1 at 1–2; Doc. No. 8-3 at 1.) Petitioner was then transported to Sioux Falls for administrative processing. (Doc. No. 8-1 at 2.) Respondents' declarant states that Petitioner remained detained at the Minnehaha County Jail until August 18, 2026, when he was then transferred to the Freeborn County Jail. (Draves Decl. ¶ 10.)

Petitioner was also issued a Form I-862 Notice to Appear ("NTA"), charging him as being present without admission or parole and lacking a valid entry document. (Doc. No. 8-2 at 1, 4.) The NTA is dated August 17, 2026 and signed in two places, but the signatures do not include a time. (*Id.*) The NTA indicates that it was served in person on August 17, 2026, but the Certificate of Service does not include a time or location of service. (*Id.* at 3.) The first page states that Petitioner is "currently residing" at the address for the Freeborn County Jail in Albert Lea, Minnesota. (*Id.* at 1.)

Petitioner remains in custody at the Freeborn County Jail. (Petition ¶¶ 1, 11.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner claims his detention without a bond hearing violates Due Process. (Petition ¶¶ 43–47.) He also claims that he was arrested in violation of the governing statutes and in violation of his Fourth Amendment rights. (*Id.* ¶¶ 48–67; *see also* Doc. No. 9 at 2.)

Petitioner challenges only the lawfulness of his present detention. He does not contest any removal order, the decision to initiate removal proceedings, or the execution of removal. Thus, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

### II. Analysis

#### A. Statutory Arrest Authority

Petitioner claims that Respondents failed to effectuate a lawful arrest under applicable immigration law. His claim thus asks whether Respondents acted under the authority conferred to them by Congress. Every federal administrative agency, including

ICE, "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022).

To arrest an individual, ICE must rely on either a valid Form I-200 administrative warrant or conduct a proper warrantless arrest under 8 U.S.C. § 1357(a)(2). *See Arizona v. United States*, 567 U.S. 387, 407–08 (2012).

Respondents present a threshold argument that Petitioner cannot challenge his arrest through habeas at all, now that removal proceedings have begun. (Doc. No. 7 at 2–6.) For support, they rely principally on *Arias v. Rogers*, 676 F.2d 1139 (7th Cir. 1982). That decision's rationale rested substantially on the administrative safeguards available to the detainees once deportation proceedings began—including prompt review by an Immigration Judge with authority to order release. *Id.* at 1142–44. Those safeguards are not available to Petitioner here. Respondents maintain that § 1225(b)(2) requires detention without bond. Petitioner explains that Immigration Judges lack authority to redetermine his custody under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025). (Petition ¶ 22.) The administrative protections available to the *Arias* detainees are not present here, which materially undermines its reasons for precluding arrest-based habeas claims. Therefore, *Arias* is distinguishable, out-of-circuit, and does not preclude habeas review of Petitioner's arrest and ensuing custody.

Respondents also argue that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2), which does not include any requirement for an arrest warrant. (Doc. No. 7 at 6–9.) The argument is rejected. As explained below, § 1225 does not include any language about the authority to arrest, much less authority to arrest a noncitizen present

in the interior. The reason is simple: arrest authority exists elsewhere—in § 1226(a) and § 1357. And if Respondents were right that § 1225 requires no warrant, they need not have issued, executed, and served an I-200 on Petitioner at the time of arrest.

Respondents contend that the I-200 was supported by probable cause independent of the NTA and that the arrest was contemporaneous with issuance of the NTA. (Doc. No. 7 at 12–14.) Petitioner accepts that ICE had a signed warrant and served it before arrest, but he challenges whether ICE could use it to arrest him before the NTA issued. (Doc. No. 9 at 2–5.)

A valid Form I-200 authorizes the arrest of a noncitizen "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b). The timing matters because an NTA initiates the removal proceeding for which the Form I-200 authorizes arrest. *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (recognizing that an NTA "serves as the basis for commencing a grave legal proceeding"). Therefore, a lawful warrant-based arrest stems from the authority Congress granted in § 1226 (allowing arrest on a warrant) and Respondents' own rule in § 236.1 (authorizing arrest on an I-200 at or after issuance of a Notice to Appear).

The I-200 identifies Petitioner's voluntary statements or other reliable evidence as its probable cause basis. (Doc. No. 8-3 at 1.) That explains why the officer signed the warrant on August 16. The question under § 236.1(b)(1) is whether the NTA had issued by the time ICE executed the warrant the next morning.

The I-213 places the arrest at 7:17 a.m. in Mitchell. Officer Martin served the

warrant there, arrested Petitioner, and transported him to Sioux Falls for processing. The report states that Petitioner was "processed and issued a WA/NTA." (Doc. No. 8-1 at 1–3.) That shorthand groups two documents together even though the warrant had been signed the day before. The sequence described in the report supports the inference that ICE issued the NTA during processing. The NTA bears Officer Cody's signature and lists Sioux Falls as the place of issuance. (Doc. No. 8-2 at 1.) Its 11:40 a.m. upload establishes that the NTA existed by that time. The Freeborn County Jail address adds little since Petitioner did not arrive there until the next day. (Draves Decl. ¶ 10.) Taken together, the officers' account and the place of issuance establish by a preponderance that the NTA issued after the arrest in Mitchell.

By executing the I-200 before the NTA issued, ICE arrested Petitioner outside the period authorized by § 236.1(b)(1). That resolves the warrant issue without deciding whether ICE could sign the I-200 in advance.

Respondents alternatively invoke § 1357(a)(2). (Doc. No. 7 at 15–17.) Petitioner's admissions gave ICE reason to believe he was unlawfully present. The statute also required reason to believe he was likely to escape before a warrant could be obtained. Petitioner was in jail. ICE interviewed him there by telephone, obtained a signed warrant, and returned the next morning to arrest him without incident. (Draves Decl. ¶¶ 6–8; Doc. No. 8-1 at 2.) Nothing in the record suggests his release from local custody was imminent or that he was likely to escape while ICE completed the NTA. Respondents infer an intent to evade ICE from an asserted failure to register, but Petitioner answered the officer's questions and disclosed his unlawful presence. (Doc. No. 7 at 17; Doc. No. 8-1

at 2.) Section 1357(a)(2) therefore supplied no alternative authority for this arrest, and Respondents' reliance on the 48-hour period in 8 C.F.R. § 287.3(d) does not supply the authority missing when the arrest occurred. (Doc. No. 7 at 17.)

### B. Remedy

The remaining question is the consequence of the unlawful arrest. Respondents contend that Petitioner is properly subject to mandatory detention under § 1225(b)(2)(A). But as explained below, § 1225 supplies no arrest authority and cannot sustain the same uninterrupted custody that began through an unauthorized arrest.

#### 1. Release preserves the statutory text and structure

Under *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), a noncitizen in Petitioner's circumstances falls within § 1225(b)(2)(A) and, after the determination prescribed there, is subject to mandatory detention during removal proceedings. *Avila* did not decide the source or limits of the Government's authority to make an interior arrest. Thus, accepting that § 1225(b)(2)(A) applies to Petitioner does not answer whether Respondents may continue custody obtained through a faulty arrest.

The Eighth Circuit has not squarely addressed this issue, and courts confronting related questions are divided. Some have denied release where another statutory basis for detention exists. *See, e.g.*, *Singh v. Sommer*, No. 7:26-cv-5013, 2026 WL 2042296, at *2–3 (D. Neb. July 15, 2026); *Cabrera v. Hidalgo*, No. 1:26-cv-1101 (LMB/LRV), 2026 WL 2002085, at *3 (E.D. Va. June 18, 2026); *A.P.A. v. Arteta*, No. 26-CV-3334 (AS), 2026 WL 1587452, at *3–4 (S.D.N.Y. June 3, 2026). Others have ordered release after finding that the Government lacked statutory authority for the arrest. *See, e.g.*, *Juan J.M.E. v.*

*Easterwood*, Civ. No. 26-2270 (KMM/EMB), 2026 WL 1746672, at *2–3 (D. Minn. June 8, 2026), *R&R adopted*, 2026 WL 1747756 (D. Minn. June 17, 2026); *Alberto Perdomo Rivera v. Mullin*, No. 5:26-cv-04197-KES, 2026 WL 2276935, at *3 & n.1 (C.D. Cal. Aug. 6, 2026).

Rules of statutory construction apply. The statutory text itself marks the analytical starting point. Related statutory provisions should be read where possible so that each retains operative effect. *See Corley v. United States*, 556 U.S. 303, 314 (2009); *Morton v. Mancari*, 417 U.S. 535, 551 (1974). An additional central rule of construction applies: where a specific provision addresses the particular governmental authority at issue, it ordinarily governs over a more general provision that might otherwise be read to reach the same subject. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (quoting *Morton*, 417 U.S. at 550–51).

Applying those principles to the arrest statutes and § 1225 serves to harmonize their distinct but complementary purposes. The arrest statutes and their implementing regulations specifically govern the authority exercised here—the power to arrest a noncitizen—and it conditions exercise of that authority either on properly issuing a warrant and executing it at the right time, or on finding reason to believe the person is unlawfully present and likely to escape. Section 1225(b)(2)(A), by contrast, addresses what follows after inspection of an applicant for admission: if an examining immigration officer determines that an applicant is "not clearly and beyond a doubt entitled to be admitted," the applicant "shall be detained" for a removal proceeding under § 1229a. That provision says nothing about arrest authority.

Reading § 1225 to sustain Petitioner's current detention despite an unauthorized arrest would substantially diminish the legal and regulatory limits placed on immigration arrests. A warrant must be based on probable cause and generally permits an arrest only once an NTA is issued. A warrantless arrest is allowed only when specified conditions are met. Yet under Respondents' reading, ICE could arrest a noncitizen and even wholly ignore those requirements, conduct the § 1225 inspection made possible by the arrest, and then continue the same custody because § 1225 requires detention. But ICE identifies no statutory authority permitting it to bypass the rules for making an interior arrest.

The provisions can instead be given full effect according to the different subjects they address. Section 1226 governs whether ICE may take an interior noncitizen into custody with a warrant. Section 1357 governs the same action but without a warrant. Section 1225(b)(2)(A) addresses what follows after examination: if an examining immigration officer determines that an applicant for admission is "not clearly and beyond a doubt entitled to be admitted," the applicant "shall be detained" for removal proceedings. *Avila* requires enforcement of that detention command, but it does not hold that § 1225 supplies authority for the arrest that precedes it. Giving effect to specific limits on that arrest therefore does not diminish § 1225 or conflict with *Avila*; it gives effect to the provisions as written.

The question, then, is not whether § 1225 "cures" the defective arrest. It does not make the arrest lawful. The question is whether § 1225 independently authorizes continuation of the same custody even though the Government lacked statutory authority to initiate that custody through the arrest it chose to make. The statutory text provides no

basis for treating the post-arrest detention directive as an independent authorization for custody obtained through an arrest subject to express limitations.

This conclusion does not treat Petitioner's current confinement as "poisonous fruit" or hold that every earlier invalid arrest necessarily invalidates later custody. It rests on the narrower relationship between the arrest and detention provisions at issue in this case. Respondents used the warrant-based arrest authority supplied by § 1226 to take Petitioner into custody, then argued that § 1357 provides them alternative arrest authority, and § 1225 contains no independent grant of arrest authority. The later § 1225 determination may remain valid for the purposes that provision serves, but it does not retrospectively supply the authority that was absent when this custody began.

Accordingly, § 1225(b)(2)(A) does not independently sustain Petitioner's present custody that began with an arrest that was not authorized by either § 1226(a) and its implementing regulations or § 1357(a)(2).

**2. *Bilokumsky* and later proceedings**

*United States ex rel. Bilokumsky v. Tod* states that if "sufficient ground" for a prisoner's detention is shown, the prisoner "is not to be discharged for defects in the original arrest or commitment." 263 U.S. 149, 158 (1923) (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

That principle cannot be given short shrift because of the case's age. The Supreme Court later cited the same page of *Bilokumsky* in *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984), when explaining that an unlawful arrest does not itself invalidate a

subsequent deportation proceeding.[1]

The *Bilokumsky* principle, however, does not resolve this case. *Bilokumsky* establishes that an unlawful original arrest does not invariably require habeas release when sufficient lawful grounds for detention subsequently exist. The unresolved question here is whether § 1225(b)(2)(A) supplies that "sufficient ground" where Petitioner remains in the same custody acquired through an interior arrest for which other provisions specifically supplied—and limited—the Government's authority.

Respondents argue that an immigration officer found Petitioner inadmissible, that the NTA reflects that finding, and that § 1225(b)(2)(A) therefore requires his detention. (Doc. No. 7 at 7.) The NTA charges Petitioner with being present without admission or parole and lacking a valid entry document. (Doc. No. 8-2 at 1, 4.) It was issued after Petitioner had been taken into custody. The I-213 describes what followed in those terms as well. It states that Petitioner "will remain in custody pending removal from the United States." (Doc. No. 8-1 at 3.) The charging decision explains why ICE continued to hold Petitioner, but it supplies no authority for the arrest through which ICE obtained the custody it now seeks to maintain. The same distinction between arrest and continued detention supports release here as it did in *Carlos F.P.P. v. Blanche*, Civ. No. 26-3123 (JWB/JFD), 2026 WL 2824801, at *5–7 (D. Minn. Sept. 21, 2026), which involved an

[1] In *Gerstein v. Pugh*, 420 U.S. 103, 113 (1975), the Supreme Court observed that it has "never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." But *Gerstein* relates to criminal arrests, not administrative immigration arrests. And Respondents *did* secure a warrant here, but they executed it in violation of the governing requirements. As explained above, allowing the ensuing detention to cure that violation renders the arrest requirements meaningless.

unauthorized warrantless arrest. That is why § 1225 is not the “sufficient ground” contemplated by *Bilokumsky* on the facts presented here.

Nor does release invalidate or alter Petitioner’s removal proceeding. *Lopez-Mendoza* teaches that the legality of an arrest does not itself determine removability and that an unlawful arrest does not necessarily invalidate the ensuing immigration proceeding. 468 U.S. at 1039–40. Petitioner does not ask to terminate the removal case, suppress evidence in it, or otherwise alter the merits of the removability inquiry. That proceeding may continue notwithstanding the relief ordered here. *See* 8 C.F.R. § 1003.19(d) (recognizing that custody determinations are “separate and apart from, and shall form no part of” a removal proceeding).

The distinction is therefore between the Government’s authority to pursue removal and its authority to maintain Petitioner’s present physical custody. The former is unaffected. The latter depends on the statutes governing arrest and detention, read together according to their distinct functions. Because the arrest through which Respondents acquired custody was not authorized, and § 1225 does not independently authorize continuation of that custody, Petitioner is entitled to release.

**3. Conclusion**

The appropriate habeas remedy is release from the present custody. *See* 28 U.S.C. §§ 2241(c)(3), 2243; *Munaf v. Geren*, 553 U.S. 674, 693 (2008). That relief is narrow. It terminates the detention initiated through an unauthorized arrest under the provisions specifically enacted to govern the seizure at issue. It does not invalidate § 1225, terminate the removal proceedings, or preclude Respondents from later arresting or detaining

Petitioner pursuant to lawful authority and in compliance with applicable statutory and regulatory requirements.

However, an additional restriction on re-detaining Petitioner is warranted here. Respondents maintain that § 1225(b)(2)(A) requires Petitioner's detention and that an Immigration Judge lacks authority to grant him bond. That position matters here because ICE has re-arrested successful habeas petitioners in this District as they were being released, in one instance within a minute. *Juan Y.P.M. v. Mullin*, Civ. No. 26-4662 (JRT/LIB), 2026 WL 3521183, at *3 & n.4 (D. Minn. Nov. 16, 2026). If that happens here, Petitioner will lose his liberty again before counsel can test whether ICE has corrected the defect in the initial arrest. A later ruling cannot restore that time.

Accordingly, the Petition for Writ of Habeas Corpus is granted in part, and Respondents are ordered to immediately release Petitioner. Petitioner's other habeas claims are not reached, and this Order expresses no position on their merits.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner Luis M.C.R.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Respondents must arrange for Petitioner's immediate release from custody. Respondents must provide Petitioner's counsel at least one-hour advance notice of the release time and location.

3. When Petitioner is released:

a. **Release and Return of Property.** When Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents shall release Petitioner without conditions. They may not require him to sign a release instrument or impose or reimpose conditions of supervision in carrying out this Order.

4. **Notice.** Within **48 hours** of entry of this Order, Respondents shall file a status update confirming the time, date, and location of Petitioner's release.

5. Detention was deemed insufficient because Petitioner's arrest occurred before issuance of the NTA and because the statutory requirements for a warrantless arrest were not met. Before re-detaining Petitioner in the pending removal proceedings, Respondents must first obtain leave in this case. The motion must be served on Petitioner's counsel, identify the authority and facts supporting the proposed arrest, and explain how the proposed arrest complies with the requirements governing it.

Respondents may request expedited consideration.

6. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 24, 2026
Time: 5:00 p.m.

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge